**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **XIAOBING WANG AND LIANGQING LI,**<br><br>Plaintiffs,<br><br>v.<br><br>**GUA JIE, *ET AL*.,**<br><br>Defendants. | Civil Case No.: 2:25-cv-00144<br><br>Honorable William S. Stickman IV<br><br>JURY TRIAL DEMANDED |

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, Xiaobing Wang and Liangqing Li ("Plaintiffs"), by and through their counsel, submit this Brief in opposition to Defendants IYOUNG, vnemofey, HongJia-Tech, cishengkeji, xin xin ran, and VGAzer-Levitating Moon Lamp's (collectively, "Defendants") Motion to Dismiss (ECF 38).

## I. INTRODUCTION AND STATEMENT OF FACTS

On January 31, 2025, Plaintiffs filed the above lawsuit alleging Defendants committed acts of patent infringement of Plaintiffs' federally registered patent US 8,294,542 ("Plaintiffs' Patent" or "Patent-in-Suit") (ECF 2). On March 6, 2025, Plaintiffs issued Plaintiffs' Written Discovery Requests on Defendants, requesting responses in fourteen days per this Court's Preliminary Injunction Order (ECF 19). Defendants' responses were initially due no later than **March 20, 2025**; however, Defendants have not provided any answers to Plaintiffs' RFP nor any responsive answers to Plaintiffs' INTs. *See* Plaintiffs' Motion to Compel (ECF 89).

All the while, Defendants have engaged in substantive motion practice (ECF 26, 27, 38, 55, 65, 75, 82, 86) and continue to argue both sides, creating clear contradictions. While

Defendants attempt to point the finger at Plaintiffs for any contradictory pleadings (ECF 90), Defendants have clearly engaged in an 'everything but the kitchen sink' approach, utilizing manipulative tactics all while failing to comply with this Court's Orders (ECF 11, 19, 64, 81) and participate in this Litigation in good faith.

For example, Defendants filed a Motion to Dismiss for lack of jurisdiction (ECF 38), including arguing, without any support, that their sales in PA were low if not zero; yet, Defendants later filed a Motion to Increase the Injunction Bond (ECF 82), in part because of their alleged, significant lost profits. Again, for example, Defendants filed a Motion to Intervene (ECF 65) on behalf of other seller aliases; yet, Defendants later filed a Motion to Sever and Brief further asserting such distance between themselves and other seller aliases is appropriate (ECF 86, 90). Again, for example, Defendants have failed to meaningfully participate in discovery, in direct violation of this Court's Orders (ECF 89); yet, Defendants filed a Motion for Leave to serve early discovery on Plaintiffs (ECF 75). Again, for example, Defendants argue severance is necessary for judicial economy and Defendants' ease and ability to participate in discovery (ECF 90); yet, Defendants' minimal and unresponsive discovery provides that Defendants' "decision [to appear together with one attorney] was made for efficiency, cost-sharing, and a cohesive defense strategy against similar allegations in the Complaint and PI motion." (ECF 89-3, INT 19). Again, for example, one of Defendants' many excuses for disobeying this Court's Order and failing to participate in discovery is due to confusion regarding what are the Accused Products (despite being defined in the Directions of the written discovery, easily labeled in Schedule A to Plaintiffs' Complaint, and provided via images in Exhibit C to Plaintiffs' Complaint) (ECF 89-3, 90); yet, Defendants have filed numerous substantive motions and declarations regarding the Accused Products. Again, for example, Defendants filed a Motion to Increase Injunctive Bond, arguing in part for an increased injunctive bond due to lost sales and other damages from the TRO and PI

(ECF 82); yet, as discussed below, most Defendants have circumvented the TRO and PI, remaining offering for sale and in fact, selling and agreeing to ship Infringing Products to the State of Pennsylvania (Exhibit A hereto). Again, **notably for this instance**, Defendants argue no connection amongst each other in their Motion to Sever (ECF 86), in their minimal response to Plaintiffs' INTs (ECF 89-3, INT 19), and in their Brief in Opposition to Plaintiffs' Motion to Compel (ECF 90); yet, Defendants' Motion to Dismiss (all filed together using the same argument) relies on a Declaration of Juyang Li, who states **"I have worked closely with the co-defendants…in collaborative project to develop the above-mentioned products and/or have direct knowledge of these products through joint engineering meetings, shared technical specifications, and testing protocols conducts between March 2015 and December 2022**". Would this not be some common connection? It is not that "plaintiffs did not like [Defendants' Interrogatory 19] answer because it did not support their claims"; rather, Plaintiffs do not like Defendants' minimal and unresponsive discovery responses because they directly conflict with other information presented by Defendants. *See* Defendants' Brief (ECF 90). And finally, again **notably for this instance**, Defendants recently argued this Court should "DISREGARD personal jurisdiction issues at this stage, as they are not contested" (ECF 90); yet, here Plaintiffs are filing a Response in Opposition to Defendants' Motion to Dismiss for lack of personal jurisdiction.

Indeed, Defendants appear to be hoping that one of their stories will stick.

## II. DEFENDANTS' LACK OF GOOD FAITH

Here, as detailed below, Defendants, excluding Defendant HongJia-Tech, have been in direct violation of this Court's Preliminary Injunction Order (ECF 19), circumventing such relief by remaining offering to sell, and indeed selling and agreeing to ship Infringing Products to the State of Pennsylvania. *See* Exhibit A.

Additionally, Defendants have failed to produce relevant discovery, including not producing any documents in response to Plaintiffs' timely issued RFPs, in direct violation of the Federal Rules of Civil Procedure and this Court's Orders (ECF 19, 64, 81). *See also* Plaintiffs' Motion to Compel (ECF 89). Plaintiffs believe the information sought in Plaintiffs' timely issued written discovery requests is highly relevant to the issues before this Court raised by Defendants. Plaintiffs have moved to stay such briefings and/or extend such deadlines until Defendants participate in this Court's Ordered discovery (ECF 88). No ruling has been made on Plaintiffs' Motion to Stay (ECF 88) or Plaintiffs' Motion to Compel (ECF 89).

As such, Plaintiffs submit this Response to Defendants' Motion to Dismiss (ECF 38), without any relevant discovery from Defendant, in accordance with this Court's previously entered briefing schedule (ECF 81).

## III. ARGUMENT

Defendants are subject to personal jurisdiction, having a relatively large sales volume of Infringing Products. Based on the relatively large sales volume of Infringing Products, Defendants' failure to produce discovery or rebut that sales were made to Pennsylvania, and Plaintiffs' purchases and shipment of Defendants' Infringing Products to Pennsylvania, Defendants have sold and shipped Infringing Products to the State of Pennsylvania, rendering jurisdiction here appropriate. Notwithstanding, Defendants are subject to personal jurisdiction pursuant to Rule 4(k)(2). Additionally, Plaintiffs' Complaint alleges sufficient factual material to state a plausible claim for patent infringement.

### A. Defendants are subject to personal jurisdiction due their sales of Infringing Products and under Rule 4(k)(2).

When the Court's personal jurisdiction is challenged at a preliminary state, "the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Indus. Elecs. Corp. v.*

*Cline*, 330 F.2d 480, 482 (3d Cir. 1964). Here, Plaintiffs have established, and maintain, more than a reasonable probability of ultimate success upon the question of jurisdiction based on Defendants' sales of Infringing Products and under Rule 4(k)(2).

First, Defendants' contention that their mere operation of an interactive website does not confer personal jurisdiction is misguided. Defendants' website is highly interactive, purely commercial in nature, and directly targets and benefits from its operation in Pennsylvania. In this case, this Court has specific jurisdiction over the foreign, alias Defendants.

"Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction over nonresident defendants 'to the fullest extent allowed under the Constitution of the United States' and 'based on the most minimum contact with this Commonwealth allowed under the Constitution.'" *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208 (3d Cir. 2014) (quoting 42 Pa. Cons. Stat. Ann. § 5322(b)). "[Zippo] has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site." *Toys "R" Us, Inc. v. Step Two*, S.A., 318 F.3d 446, 452 (3d Cir. 2003). When analyzing Internet commerce cases, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). "This sliding scale ranges from situations where a defendant uses an interactive commercial website to actively transact business with residents of the forum state (personal jurisdiction exists) to situations where a passive website merely provides information that is accessible to users in the forum state (personal jurisdiction does not exist)." *Ackourey*, 573 F. App'x 208; *See Zippo,* 952 F. Supp. at 1124. "To determine whether personal jurisdiction exists for situations between these extremes, we examine 'the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.'" *Id.*; *See Zippo,* 952 F. Supp. at 1124; *See also Toys "R" Us*, 318 F.3d at 452.

Here, Defendants' Infringing Product websites are purely commercial in nature, where the only natural intention is to transact business regarding Infringing Products, including with residents of Pennsylvania. Consumers in Pennsylvania can and do view Defendants' Infringing Products listings, communicate with Defendants regarding their respective Infringing Products, place orders for Defendants' Infringing Products, and ship Defendants' Infringing Products to United States addresses, including Pennsylvania. *See* **Exhibit C** to Plaintiffs' Complaint, showing how each Defendant operates a highly commercial and interactive webpage, and stands ready, willing, and able to sell and ship (i.e. transact business) with consumers in Pennsylvania. Indeed, the nature and quality of Defendants' commercial activity lean in favor of personal jurisdiction. Defendants are anonymous seller aliases whose sole goal is to achieve sales of Infringing Products in the United States, including Pennsylvania, through the commercial websites at issue. The level of interactivity is extremely high, where the nature of Defendants' webpages are purely commercial in nature as opposed to some 'passive' website only providing information. In fact, as detailed in the attached Declaration of Ge (Linda) Lei, the third party discovery reveals Defendants have a relatively high gross revenue of sales of Infringing Products:

- Defendants IYOUNG: 240 units for $18,999.98;
- Defendant vnemofey: 49 units for $3,629.49;
- Defendant HongJia-Tech: 1565 units for $131,683.38;
- Defendant cishengkeji: 1206 units for $95,387.00;
- Defendant xin xin ran: 40 units for $3,230.55; and
- Defendant VGAzer-Levitating Moon Lamp: 83 units for $6,413.38.

Based on these sales figures and Plaintiffs' well-pleaded Complaint alleging and providing evidence of Defendants' offering for sale and ability to sell and ship Infringing Products to the State of Pennsylvania, Defendants are engaged in commercial activity in the state of Pennsylvania

which supports the conclusion that Defendants directly target the state of Pennsylvania and are subject to personal jurisdiction herein. Moreover, as discussed in Plaintiffs' Motion to Compel (ECF 89), Defendants have failed to provide responsive discovery denying such allegations, and Defendants' own Motion to Dismiss does not rebut this position, only providing the unsupported, conclusory statement that "sales of accused products in Pennsylvania, if any, are minimal" (ECF 38). Defendants even ask this Court to: "DISREGARD personal jurisdiction issues at this stage, as they are not contested." (ECF 90). If such allegations were not true, Defendants would have pleaded as such or stated as such in their written discovery responses. Moreover, each Defendant, excluding Defendant HongJia-Tech[1], remained offering for sale the Infringing Products as of April 2025, in direct violation of this Court's Preliminary Injunction Order (ECF 19). *See* Exhibit A. As seen in Exhibit A, each Defendant, excluding Defendant HongJia-Tech, has offered for sale, and indeed sold and agreed to ship Infringing Products to the State of Pennsylvania. Based on the foregoing, and even without discovery as ordered by this Court, Plaintiffs submit they have established that there is "at least a reasonable probability of ultimate success upon the question of jurisdiction."

Notwithstanding, regardless of the amount of actual sales of Infringing Products to Pennsylvania, the nature and quality of commercial activity of Defendants' Infringing Product webpages establishes personal jurisdiction. Plaintiff respectfully submits that to hold otherwise would allow foreign, anonymous aliases to continue infringement operations with impunity and disregards the significant form of harm Plaintiffs face from dozens of anonymous aliases offering for sale, and usually completing sales of, products that directly infringe Plaintiffs' Patent. Indeed, if personal jurisdiction turns on whether the highly commercial, interactive website has actual sold

[1] Defendant HongJia-Tech appears to not have the Infringing Product listings available at this time. A purchase confirmation of another product is shown in Exhibit A, evidencing Defendant HongJia-Tech's willingness to offer to sell, sell, and ship products to Pennsylvania residents.

and shipped an Infringing Product to the forum (which has occurred and is highly likely in this case, as discussed above), Plaintiffs could satisfy this requirement before filing a lawsuit, resulting in a substantial waste of funds and products. Even more, if personal jurisdiction were not found from the sale and shipment of an Infringing Product to the forum, foreign anonymous aliases like Defendants would continue infringement of U.S. property rights with impunity, resulting U.S. assets moving overseas to China at the expenses of U.S. property holders, the U.S. marketplace, and U.S. consumers.

Second, personal jurisdiction is proper under Rule 4(k)(2).[2] "Rule 4 [of the Federal Rules of Civil Procedure] is the starting point for any personal jurisdiction analysis in federal court." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009). Rule 4(k)(2) "was adopted to provide a forum for federal claims in situations where a **foreign defendant lacks substantial contacts with any state** but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal laws." *Merial Ltd. v. Cipla, Ltd.*, 681 F.3d 1283, 1293-94 (Fed. Cir. 2012) (citing Synthes, 563 F.3d at 1295-95; advisory committee notes to the 1993 amendment establishing Rule 4(k)(2)).

In this case, the first requirement under Rule 4(k)(2) is uncontested – whether Plaintiffs' claim arises under federal law. Pursuant to 28 U.S.C. § 1338(a), a federal district court has "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. . . ." For the second requirement, the specific inquiry is Defendants' **general jurisdiction**. Defendants admit, and Plaintiffs do not rebut, that this Court does not have general jurisdiction. Based on Defendants' allegations of being incorporated in

[2] Rule 4(k)(2): "Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

China, having their principal place of business in China, and otherwise only operating out of China, Defendants are not subject to any State's general jurisdiction. *See* Defendants' Motion to Dismiss and Exhibit A thereto (ECF 38, 49-1). As such, this Court is entitled to use Rule 4(k)(2).

For the third requirement, Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009). As alleged in Plaintiffs' Complaint, Defendants offer to sell and stand ready, willing, and able to sell and ship Infringing Products to residents of the forum (the United States). As detailed above, Defendants have made at least 3,100 combined sales of Infringing Products to the United States. These Defendants have specifically chosen to offer Infringing Products to residents of the United States for monetary gain, on a United States platform, in English, accepting U.S. currency. Plaintiffs' claims arise out of and/or relate to Defendants' activities with the forum (i.e. the United States). Plaintiffs' claims include infringement of a U.S. Patent in the United States. These claims by Plaintiffs all relate to Defendants' activities within the United States; specifically, all relate to them: opening an online U.S. marketplace, accessible to U.S. residents, operating these marketplaces in the U.S., using English and accepting U.S. currency, under anonymous aliases, offering for sale and standing ready, willing, and able to sell and ship products infringing a U.S. Patent in the U.S. to U.S. residents, and actually selling and shipping products infringing a U.S. Patent to U.S. residents. Indeed, Defendants specifically sought to receive financial gain from U.S. residents by selling products that infringe U.S. property rights, all with the end goal of controlling the United States' free market, at the detriment of the United States' government, its citizens, and Plaintiffs. All of Plaintiffs' claims relate to Defendants' activities with the United States.

Moreover, this Court has an interest in adjudicating this dispute because it involves U.S. property rights – a patent. The validity and attempted enforcement of the patent against anonymous

seller aliases operating abroad to sell and ship Infringing Products into the United States, and taking U.S. consumer funds back to China, concerns the U.S. patent system as a whole and the U.S. marketplace, thereby affecting U.S. citizens. Plaintiffs have much interest in obtaining convenient and effective relief, whereas other foreign jurisdictions will be unable to grant the relief sought by Plaintiffs (i.e. enforcement of a U.S. patent in the United States marketplace). The United States is the most efficient forum for Plaintiffs' claims. Foreign jurisdictions are not as interested as the United States when the issue concerns the infringement and validity of an U.S. patent in the U.S. marketplace. Finally, the United States has a cognizable policy interest in regulating and enforcing the rights granted by the United States Patent and Trademark Office. Patents have a substantial impact on the U.S. marketplace, affecting U.S. citizens and entities. As a result, based on the factors outlined above, personal jurisdiction is reasonable and fair under Rule 4(k)(2).

**B. Plaintiffs' well-pleaded Complaint alleges sufficient facts.**

Here, despite labeling their Motion as a Failure to State a Claim, Defendants do not provide any substantive argument or discussion of Plaintiffs' Complaint besides a contention that the 46-page representative claim chart is inadequate.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Moreover, the Court "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).

"To plead a patent infringement claim, a complaint must place the 'potential infringer . . . on notice of what activity . . . is being accused of infringement.'" *Glover v. Cohen*, Civil Action No. 19-734, 2021 U.S. Dist. LEXIS 31010, *15 (W.D. Pa. Feb. 19, 2021) (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). "To state a claim for direct infringement of a patent under 35 U.S.C. § 271, a complaint must: [(1)] name the accused product; (2) in each count, describe the alleged infringement; and (3) identify how the accused product infringed on every element of at least one claim in each of the plaintiff's patents." *Miller Indus. Towing Equip. v. NRC Indus*., 582 F. Supp. 3d 199, 203 (D.N.J. 2022). In other words, "[r]egarding a utility patent, '[t]o provide notice, a plaintiff must generally do more than assert that the product infringes the claim; it must show how the defendant plausibly infringes by alleging some facts connecting the allegedly infringing product to the claim elements.'" *Glover*, 2021 U.S. Dist. LEXIS 31010 at *15-16 (quoting *Boston Sci. Corp. v. Nevro Corp*., 415 F. Supp. 3d 482, 489 (D. Del. 2019).

First, Plaintiffs name Defendants' Infringing Products. As seen in Schedule A to Plaintiffs' Complaint (ECF 2-2), Defendants' respective ASINs are listed for those Defendants on Amazon and Defendants' respective Store IDs are listed for those Defendants on Walmart. Moreover, as seen in Exhibit C to Plaintiffs' Complaint (ECF 2-6), Defendants' Infringing Products are respectively identified via full listing pages, showing an image and other unique identifying information respective to the marketplace platform listing. Plaintiffs have met this first requirement. *See Miller Indus. Towing Equip*., 582 F. Supp. 3d at 204 (…"the Complaint clearly named the accused product…the Complaint lays out a list of Defendant's infringing models...The Court holds that this satisfactorily provides a 'list the defendant's products that allegedly infringe'…").

Second, Plaintiffs adequately describe the alleged infringement. *See* Plaintiffs' Complaint at ¶ ¶ 1, 4, 16-41, 43-44, 48-58, detailing how Defendants are anonymous e-commerce stores

selling magnetic suspension devices infringing US 8,294,542, how Defendants create and operate under anonymous seller aliases, how Defendants target sales of Infringing Products to Pennsylvania and U.S. residents through such anonymous aliases, how Defendants sell, offer to sell, and/or ship Infringing Products to Pennsylvania and the U.S., how Defendants reside in China, how Defendants utilize content and images making it hard for U.S. consumers to distinguish Defendants from authorized retailers of Plaintiffs' Patent products, how Defendants regularly register new seller aliases for the purpose of offering for sale and selling Infringing Products, how Defendants' Infringing Products were manufactured by and come from a common source, how Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products, how Defendants take advantage of a set of circumstances the anonymity and mass reach the internet affords to sell counterfeit and infringing goods across international borders and violate Plaintiffs' intellectual property rights with impunity, how Defendants' behavior impacts Plaintiffs and Plaintiffs' patent rights, how Defendants, directly or through intermediaries, offer to sell, sell, and ship products which infringe the Patent-in-Suit, how Defendants are making, using, offering for sale, selling, and/or importing into the United States, and Pennsylvania, for subsequent sale or use, Infringing Products that infringe directly and/or indirectly infringe the Patent-in-Suit, how Defendants are directly infringing, literally infringing, and/or infringing the Patent-in-Suit under the doctrine of equivalents, how the Infringing Products directly infringe Claim 1 of the Patent-in-Suit…, how the Infringing Products directly infringe Claim 2 of the Patent-in-Suit, how the Infringing Products directly infringe Claim 3 of the Patent-in-Suit, and how the Infringing Products directly infringe Claim 8 of the Patent-in-Suit, how Defendants have been and are now actively infringing the claims of the Patent-in-Suit in the State of Pennsylvania, in this judicial district, and other jurisdictions in the United States by selling or offering to sell the infringing Patent-in-Suit products; *See also*

Schedule A to Plaintiffs' Complaint, Exhibit A to Plaintiffs' Complaint, Exhibit B to Plaintiffs' Complaint, and Exhibit C to Plaintiffs' Complaint (ECF 2-2, 2-4, 2-5, 2-6), detailing and providing evidence of Plaintiffs' Patent, Defendants and their respective Infringing Products, and a 46-page claim chart applying the Plaintiffs' Patent to Defendants' Infringing Products. Plaintiffs have met this second requirement.

Third, Plaintiffs' Complaint sufficiently sets forth how the Infringing Products infringe on every element of at least one claim. As a preliminary matter, much of Defendants' Motion relies on attempting to define and engage in claim construction by creating Defendants' own interpretation of claim limitations, elements, and groupings thereof. However, at this stage, claim construction need not be examined nor is appropriate. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018).

To continue, as described above, Plaintiffs' Complaint alleges thorough background and narrative behind Defendants and Defendants' Infringing Products, and specifically, Plaintiffs' Complaint describes how Defendants' Infringing Products directly infringe at least Claim 1, 2, 3, and 8. *See* Plaintiffs' Complaint at ¶ ¶ 52-55; *See also Miller Indus. Towing Equip*., 582 F. Supp. 3d 199, 205 (D.N.J. 2022) ("[w]hile Defendant characterizes Plaintiff's method of mapping the elements in the claims to how Defendant infringed on those claims as simply "parroting" or "directly copying" the claims language in the '577 Patent…it does not consider the allegations in the Complaint as a whole. While the Complaint does copy a lot of language from the '577 Patent in describing how its claims were infringed…it also provides narrative background breaking down the claims and how Defendant's rotating wreckers infringe on Plaintiff's patent.") Indeed, based on the well-pleaded factual allegations of Plaintiffs' Complaint, along with the Patent-in-Suit (Exhibit A) and Defendants' Infringing Product listings (Exhibit C), Plaintiffs have sufficiently set forth how the Infringing Products infringe on every element of at least one claim.

Moreover, Plaintiffs provided a 46-page representative claim chart mapping the Infringing Products to Claims 1, 2, 3, and 8 of the Patent-in-Suit. *See* Exhibit B to Plaintiffs' Complaint (ECF 2-5). In this side-by-side analysis, Claims 1, 2, 3, and 8 of the Patent-in-Suit are mapped entirely, grouped according to Plaintiffs' interpretation and judgment on proper subsections per row. In comparison to Claims 1, 2, 3, and 8 of the Patent-in-Suit, images of Infringing Products, Infringing Product listings, disassembled test-buy Infringing Products, and detailed descriptions of such images and products are provided. Indeed, each and every element of Claims 1, 2, 3, and 8 of the Patent-in-Suit are mapped correspondingly to appropriate images, listings, and descriptions in Exhibit B to Plaintiffs' Complaint.

Based on the foregoing, Plaintiffs have met this third requirement.

In sum, Plaintiffs' well-pleaded Complaint alleges sufficient facts to place Defendants "on notice", showing exactly how Defendants infringe by alleging sufficient "facts connecting the allegedly infringing product to the claim elements."

## III. CONCLUSION

In sum, Defendants continue to file contradictory motions and briefings on substantive issues; yet, Defendants are blatantly refusing to participate in good faith discovery, nor even cease their sales of Infringing Products, as required under FRCP and previously Ordered by this Court. Plaintiffs submit that their written discovery requests, as Ordered by this Court to be expeditious and timely served by Plaintiffs, are relevant to the issues before this Court. Notwithstanding, based on the pleadings and current information available to Plaintiffs, Plaintiffs have established and maintain that personal jurisdiction over Defendants is proper due to their sales of Infringing Products and under Rule 4(k)(2). Moreover, Plaintiffs' well-pleaded Complaint alleges sufficient facts to establish a cause of action for patent infringement.

DATED April 16, 2025

Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFFS*